UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD DENARD,

      Plaintiff,                           Case No.  10-14023

v.                                    HONORABLE DENISE PAGE HOOD

OFFICER M. WILLIAMS, OFFICER V.
EWING and CITY OF HIGHLAND PARK,

      Defendants.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS
AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND SETTING FINAL PRETRIAL CONFERENCE

I.      BACKGROUND

On September 9, 2010, Plaintiff Ronald Denard ("Denard"), filed a Complaint in the Wayne County Circuit Court against Defendants City of Highland Park ("Highland Park") and Highland Park Police Officers M. Williams ("Williams") and V. Ewing ("Ewing") alleging several causes of action, including false imprisonment, failure to monitor, intentional infliction of emotional distress, unlawful search and seizure, and a 42 U.S.C §1983 claim for violation of his Fourth and Fourteenth Amendment rights.  (Comp., ¶ 1).  The Complaint was subsequently removed by Defendants on October 7, 2010.  Defendants filed an Answer, on October 8, 2010, and then filed a Motion to Dismiss for  failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) on April 19, 2011. Denard filed a response to the motion on May 10, 2011.  Defendants filed a reply to the response on May 13, 2011.  Defendants also filed a Motion for Summary Judgment on May 23, 2011.  A response and reply have been filed to the summary judgment motion.  Oral arguments

were held on the motions.

Denard's Complaint alleges that Williams and Ewing arrested Plaintiff without explanation after he assisted the school's R.O.T.C. director in ending a fight and separating the students involved. (Comp., ¶¶ 15, 19).  Denard alleges that he did not assault or injure the students in any way. (Comp., ¶ 17).  Denard was not told of any charge against him or any reasons for suspicion. (Comp., ¶ 20).  At the station, his personal property was taken and he was placed in a holding cell for over four hours. (Comp., ¶¶ 21-22).  Denard claims that this violated his right to be free from unreasonable searches and seizures.   (Comp., ¶ 30).

Denard claims that Highland Park is also liable for the actions of the police officers, because it showed deliberate indifference to his constitutional rights by failing to prevent such incidents from occurring or by properly punishing wrongdoing.  (Comp., ¶ 31).  Denard asserts that this is a widespread practice within Highland Park  (Comp., ¶ 42).

## II.    ANALYSIS

### A.    Motion to Dismiss and Motion for Summary Judgment Standards of Review

A motion to dismiss for  failure to state a claim upon which relief can be granted is codified under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  The Supreme Court explained the pleading standard required to overcome a motion to dismiss in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), stating that "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level..." *Id.* at 555 (internal citations omitted).  The standard promulgated by *Twombly* doesn't negate the Rule 8(a)(2) "notice pleading" requirement, but rather

rejects the "no set of facts" standard which the Court saw as "an incomplete negative gloss on an accepted pleading standard." *Id.* at 563.

The heightened pleading standard required to survive a motion to dismiss does " not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Court may find facial plausibility where the allegations, taken as true, are sufficient enough to make a reasonable inference as to the liability of the respondent, not simply the possibility of some unlawful activity. *Id.* at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss," even if the legal conclusions are true. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1954, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, the complaint must plead facts that support an allegation of liability. The complaint cannot simply state legal conclusions. When considering the sufficiency of the pleadings, the court looks to the complaint, and may also reference matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

The Sixth Circuit has interpreted *Iqbal* to mean that discovery cannot serve as the means to obtain the facts required in a complaint. *See New Albany Tractor v. Louisville Tractor,* ___ F.3d ___, 2011 WL 2448909 *3 (6th Cir. 2011)(to be published). In *New Albany Tractor*, the plaintiff was unable to provide facts related to the allegations because the information was retained by the defendants. *See id.* The Sixth Circuit held that based on *Iqbal, "no* discovery may be conducted in

3

cases such as this, even when the information needed to establish a claim ... is solely within the purview of the defendant or a third party, as it is here." *Id.* "The plaintiff may not use the discovery process to obtain these facts *after* filing suit." *Id.* "If the plaintiff should be able to find out the facts it needs to state a claim, it will have to file another suit." *Id.* at *5.

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material.

---

[1] Rule 56 was revised on December 1, 2010 which governs the instant motion.  Fed. R. Civ. P. 86(a).

4

*Anderson*, 477 U.S. at 248.

Rule 56(c)(1) provides that parties must support their factual assertions by citing to particular parts of the record.  Fed. R. Civ. P. (c)(1).  Although the court may consider other materials in the record, the court need only consider the cited materials.  Fed. R. Civ. P. 56(c)(3).  If facts are unavailable to the nonmovant, that party must show by affidavit or declaration that it cannot present such facts for specific reasons.  Fed. R. Civ. P. 56(d).

**B.    Municipal Liability**

Defendants claim that the Complaint does not satisfy the pleading requirements, because it states legal conclusions and not factual allegations.  Defendants argue that Highland Park must be dismissed because the Complaint fails to state sufficient factual allegations to support a claim that a policy or custom by Highland Park or its failure to train its employees caused a constitutional violation injuring Denard.  In response, Denard argues that Williams conferred with the Chief of the Highland Park Police before wrongfully arresting and detaining Denard which Denard claim is sufficient to plead municipal liability as to Highland Park.

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law."  *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992).  The following requirements must be met:  (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987).  As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for

5

asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-94 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

6

Reading Count II of the Complaint, Denard alleges that Highland Park knew or should have known of the individual Defendants' propensity for unconstitutional conduct, that Highland Park had a custom, pattern and/or practice of failing to take disciplinary action to correct or remedy the unlawful conduct of the officers, that Highland Park had a custom, pattern and/or practice of failing to supervise and/or train the officers and that Highland Park had a long-standing custom, pattern and/or practice of demonstrating deliberate indifference to unreasonable, inadequate and deficient investigations, illegal searches and seizures and unsupported prosecutions.  (Comp., ¶¶ 37-41)  Denard sets forth a list of policies, customs, patterns and practices by Highland Park.  (Comp., ¶ 42)  All the allegations are legal conclusions.  Denard does not allege any facts to support these legal conclusions.  Denard does not allege the actual custom or policy of Highland Park which violates the constitution, other than the words "custom or policy."  Denard also submits no factual links between the alleged shortcomings of Highland Park and the injury to Denard.  Merely conferring with the Chief of Police does not show liability under a *respondeat* theory. *See, Hull,* 926 F.2d at 515.

As to Denard's inadequate training claim, he fails to state facts showing how Highland Park failed to properly train its officers, other than noting the words, "failure to train."  To merely state that a municipality has a policy or custom is not enough; a plaintiff must allege facts demonstrating that a municipality's policy, such as examples of past situations where law enforcement officials have violated constitutional rights. *See Williams v. City of Cleveland,* 2009 WL 2151778 at * (N.D. Ohio Jul. 16, 2009)(unpublished); *Sanchez-Orozco v. Livonia Police Dep't,* 2009 WL 2922041 at * 3 (E.D. Mich. Sept. 8, 2009)(unpublished).  Under the heightened pleading requirements set forth in *Iqbal* and *Twombly,* Denard must have obtained any facts to support his inadequate training and

7

custom claims prior to filing the suit; Denard has failed to state a claim of municipal liability under Section 1983 against Highland Park.

### C.    Qualified Immunity on Section 1983 Claims

#### 1.    Standard

Defendants Officers Williams and Ewing argue that they are entitled to qualified immunity since Denard has failed to plead facts sufficient to support his claim that his Fourth and/or Fourteenth Amendment rights were violated by the individual Defendants.   Denard responds that the Complaint pleads sufficient facts that Williams and Ewing arrested him without probable cause and detained him for over four hours.   Denard alleges that Williams and Ewing arrested him and removed him from the school property in front of assembled students and staff after he separated students involved in a fight on October 9, 2009.   Denard asserts that he was not made aware of the criminal charges against him and was not accused of any related wrongdoing prior to the arrest. Denard claims his personal property was taken away and that he was detained in a holding cell with no notice of any charges brought against him.

Government officials are entitled to *qualified* immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the action at issue was lawful]; but if the officer of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are

8

avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

### 2.    Prompt Arraignment

Denard claims his constitutionally protected right to a prompt arraignment following a warrantless arrest was violated. An individual has a constitutionally protected right to an

arraignment and a determination of probable cause within forty eight hours of a warrantless arrest. *County of Riverside v. McLoughlin,* 500 U.S. 44, 56-57 (1991).

Denard asserts in the Complaint that he was placed in handcuffs, removed from the school and booked in the Highland Park Police Department offices. (Comp., ¶ 19) He was placed in a holding cell for over four hours and then released from custody without being charged, without being brought before a magistrate. (Comp., ¶¶ 19-24)

Based on the factual allegations in the Complaint, Denard fails to state a claim that his right to an arraignment and determination of probable cause. Denard was held for over four hours but not for forty eight hours as set forth in the *McLoughlin* case. Any claim that Denard's right to a prompt arraignment and determination of probable cause must be dismissed.

### 3.      False Arrest and Detention Claims

Defendants assert the officers had probable cause to arrest Denard. Denard claims he was subject to false arrest and detention for over four hours without probable cause.

In a Section 1983 claim, proof of the actual existence of probable cause is an absolute bar to a 1983 action for unlawful arrest. *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988). Where probable cause to arrest exists, no constitutional violation occurs and the Court does not even reach the issue of qualified immunity. *Id.* Probable cause to arrest has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person or one of reasonable caution, in believing in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires merely the probability of criminal activity, and need not show a "prima facie" case of the crime. *Illinois v. Gates*, 462 U.S. 213 (1983). Whether probable cause exists is

10

determined by the totality of the circumstances. *Id.* at 238. A valid arrest based upon a then-existing probable cause is not vitiated if the suspect is later acquitted or the charges are dismissed. *Criss*, 867 F.2d at 262; *Arnott v. Mataya*, 995 F.2d 121 (8th Cir. 1993). An officer "is under no obligation to give any credence to a suspect's story, nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss*, 867 F.2d at 263. "The Constitution does not guarantee that only the guilty will be arrested. If it did, Section 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released." *Id.*

The Complaint alleges that Denard assisted the school's R.O.T.C. director in ending a fight between two high school students. Highland Park High School administrators investigating the fight summoned Denard to the office without explanation. Williams and Ewing arrested Denard, placed him in handcuffs, removed him from the school property and booked him at the Highland Park Police Department offices. (Comp., ¶¶ 15-19) Denard alleges he was never advised of any criminal charges against him. He was held for over four hours. (Comp., ¶¶ 20-23) Based on the facts alleged in the Complaint, Denard has stated a claim of false arrest or detention.

In Defendants' Motion for Summary Judgment on the false arrest or detention claim, Defendants submitted the deposition of Denard and reports by co-worker Major Jeffrey Herman "Herman" and school security officer, Tommie Green ("Green"). Denard testified that on October 9, 2009, Major Herman told him there was a fight between two students and the Major was trying to prevent the two students from fighting. (Denard Tr. at 28) Denard told a student to get security personnel. (Denard Tr. at 29) Denard did not assist his co-worker Major Herman from breaking up the fight. (Denard Tr. at 30) Denard placed both students in a room. (Denard Tr. at 30) Denard

11

denied the statement made by Major Herman that Denard told Major Herman "he was going to put both students in the drill room and let them fight." (Denard Tr. at 33). Denard testified that he has used the technique of putting students in a room alone who are threatening to fight. (Denard Tr. at 34). Denard indicated he does not know the school policy regarding actions to take when students are ready to engage in a fight. (Denard Tr. at 55) Denard does not remember being told by Major Herman that it was not a good idea to put two students in a drill room alone but remembers that students told Denard it was not a good idea. (Denard Tr., at 38-42) Denard himself had concerns that the two students would continue fighting int eh room alone. (Denard Tr. at 43)

Denard testified that his co-worker told him the two students were fighting/wrestling on the floor in the drill room where Denard had placed the students. (Denard Tr. at 45) His co-worker informed Denard that the students would have to be taken out of the room. (Denard Tr. at 46) Denard testified he was not sure how long the students were alone in the room. (Denard Tr. at 49) Denard recalls many people telling him to get the students out of the room. (Denard Tr. at 54-56) Denard testified that he did not know that the two students could have been placed in two different rooms. (Denard Tr. at 59-60) When security appeared, Denard went back to his class. (Denard Tr. at 68)

Denard was later told that the police officers and the principal wanted to speak with him but ignored the request. (Denard Tr. at 71) He was then summoned to the principal's office a second time. (Denard Tr. at 72) Denard testified that he had contact with the officers but was not questioned. (Denard Tr. at 23, 25) Denard stated that he was then arrested, handcuffed and taken to the police station and released four hours later without being interrogated. (Denard Tr. at 77-82)

Major Herman's written report dated October 12, 2009 of the October 9, 2009 incident stated

12

that it was not a good idea to put both fighting students in the same room.  (Ex. 3, Def.'s Motion) Tommie Green's report dated October 9, 2009 indicated that he responded to a "code red" fight. Green saw both students fist fight in the room and one student was bleeding from his nose and mouth. Green told Denard that he needed to get the students out of the room.  He then went in the room and removed both students and brought them to the offices.  (Ex. 4, Def.'s Motion)

As noted above, the Court found that based on the Complaint, Denard has stated a claim of false arrest and detention.  In their Motion for Summary Judgment, Defendants have not carried their burden to show that there is no genuine issue of material fact as to whether there was probable cause to arrest and detain Denard.  Defendants did not submit any evidence to show that Denard was arrested for any alleged criminal activity.  Defendants assert that Denard may have been arrested for encouraging fighting between students, that he was an aider and abettor to assault and battery, M.C.L. § 750.81(1), CJI2d 8.1, or contributed to the delinquency of a minor, M.C.L. § 750.145. Although Defendants cited the criminal statutes which they claim may have been the basis for Denard's arrest, there is no evidence submitted that Defendants Williams and Ewing in fact arrested Denard for any of these reasons.  Defendant submitted the reports by Major Herman and Tommie Green of the incident but there is no evidence that the Defendant Officers based their arrest on these two reports.  Defendant' Motion for Summary Judgment on the issue of qualified immunity is denied since they have not carried their burden on this issue.

### 4.    Malicious Prosecution

Denard claims in his response to Defendants's Motion for Summary Judgment that Defendants Williams and Ewing are liable for malicious prosecution because they had "an ax to grind" against Denard which influenced the arrest, detention and violation of Denard's constitutional

rights.  Defendants assert that because there was no further prosecution of Denard, other than the initial arrest, Denard fails to state a malicious prosecution claim.

The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which is entirely distinct from that of a false arrest claim, since a malicious prosecution claim remedies detention accompanied by wrongful institution of legal process.  *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010).  Four elements must be shown to succeed on a malicious prosecution claim based on the Fourth Amendment.  First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.  *Id.*  Second, a plaintiff must show that there was a lack of probable cause for the criminal prosecution.  *Id.*  Third, the plaintiff must show that as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, apart from the initial seizure.  *Id.* at 308-09.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.  *Id.*

Because Denard has not alleged that apart from the initial seizure, he suffered a deprivation of liberty, Denard fails to state a claim of malicious prosecution.  Denard admits that no further criminal prosecution, other than his initial arrest, was instituted which resulted in any further jail or prison time.  Denard's malicious prosecution claim is dismissed.

**D.    Governmental Immunity on State Law Claim of Gross Negligence**

Defendants move for summary judgment based on governmental immunity as to Denard's state law claim of gross negligence, Count III of the Complaint.  Denard did not address this issue in his response to the motion.

In Michigan, "gross negligence" requires a defendant act negligently *after* a plaintiff

14

negligently contributes to his own peril, known as "subsequent negligence." *Ellsworth v. Highland Lakes Development Assoc.,* 198 Mich. App. 55, 61 (1993).  Courts have also equated "gross negligence" to mean an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, implying a thoughtless disregard of consequences, without the exertion of any effort to avoid them. *McKeever v. Galesburg Speedway, Inc.,* 57 Mich. App. 59, 62 (1974).  Michigan law does not allow intentional acts, even when couched in terms of breach of duty, to be the basis of a claim for gross negligence. *Miller v. Sanilac County,* 606 F.3d 240 (6th Cir. 2010); *Van Vorous v. Burmeister,* 262 Mich. App. 467, 483 (2004)("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.").  If the claims are premised on the same facts as an intentional tort claim, the gross negligence claim should be dismissed if it alleges intentional conduct that is merely "duplicative of, and subsumed by," the intentional tort claim. *Ranshaw v. City of Lansing,* 2009 WL 435237 *3 (W.D. Mich. Nov. 30, 2009)(unpublished).  State law claims including false arrest/false imprisonment and malicious prosecution are intentional tort because they contain intent as an element.  *Miller,* 606 F.3d at 254.  Gross negligence is not considered an intentional tort.  *Id.*

An employee of a governmental agency acting within the scope of his or her authority is immune from tort liability, including negligence torts, unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury.  M.C.L. § 691.1407(2);*Robinson v. Detroit,* 462 Mich. 439, 462 (2000).  Subsection 2 grants immunity for acts taken while in the course of employment or service if the employee is acting or reasonably believes he or she is acting within the scope of his or authority, the agency that the employee serves is engaged in the exercise or

discharge of a governmental function and the employee's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. *Odom v. Wayne County,* 482 Mich. 459, 470 (2008). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results," M.C.L. § 691.1407(7)(a), and has been held to suggest an "almost willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree,* 263 Mich. App 80, 90 (2004).

If an intentional tort is alleged, governmental immunity applies under M.C.L. § 691.1407(3), not subsection 2, as required by *Ross v. Consumers Powers.  Odom,* 482 Mich. at 482. To be entitled to governmental immunity for an intentional tort, a defendant must establish that he  was acting in the course of his employment, at least reasonably believed that he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith, which is defined as without malice. *Id.* at 474-76. Discretionary acts require personal deliberation, decision and judgment and implies the right to be wrong. *Id.* at 476. Granting immunity to an employee engaged in discretionary acts allows the employee to resolve problems without constant fear of legal repercussions. *Id.*

Denard's gross negligence claim alleges that Defendants breached their duty "by failing to properly investigate, failing to provide exculpatory facts, arresting and/or imprisoning Plaintiff, causing the continued illegal imprisonment without a probable cause determination, and by failing to intervene and stop each other from engaging in said conduct when Defendants had the ability to do so." (Comp., ¶ 48) Denard's gross negligence claim, couched in terms of breach of duty as in a negligence tort claim, is based on the intentional tort claims of false arrest/imprisonment and malicious prosecution. The facts forming the basis of the gross negligence claim are the same facts

16

alleged in Denard's § 1983 false arrest and malicious prosecution claims addressed above.  The gross negligence claim must be dismissed for failure to state a claim.  *See, Miller,* 606 F.3d at 254.

####  E.    Amend the Complaint/Remaining Discovery Issues

Denard's response to Defendants' Motion to Dismiss seeks to amend his Complaint if the Court holds that Denard failed to sufficiently plead violations under § 1983.  Rule 15(a) of the Rules of Civil Procedures provides that a pleading may be amended if justice so requires and that leave to amend shall be freely given, unless any proposed amendment would be futile.  *Kottmyer v. Maas,* 436 F.3d 684, 692 (6th Cir. 2002).  The Local Rules provide that a party who moves to amend a pleading shall attached the proposed amended pleading to the motion.  E.D. Mich. LR 15.1.  Rule 5(e) of the E.D. Mich. Elec. Filing Policies and Proc. provides that "a response or reply to a motion must not be combined with a counter-motion."

Denard sought to leave to amend in his response, a violation of Rule 5(e) of this Court's procedures.  Even if the Court were to consider Denard's request to amend the Complaint, the request would be futile, in light of *Iqbal* and the Sixth Circuit's ruling in *New Albany Tractor* noted above.

Denard complains in his responses that he has been unable to obtain discovery from the defense but no motion to compel as contemplated by Rule 37.  Fed. R. Civ. P. 37(a).  Defendants argue that any request for further discovery is untimely since the discovery deadline has passed and Denard failed to file the appropriate motion to compel.

Denard asserts that the depositions of Williams and Ewing were cancelled due to training. The Court finds that Denard failed to follow the appropriate procedure regarding requests for further discovery.  However, given that this Court denied the summary judgment motion as to these two

17

individuals, Denard may proceed with the depositions on the remaining claim of a Fourth Amendment violation based on false arrest/detention against Williams and Ewing.

### III.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss under Rule 12(b)(6) **(Doc. No. 12, filed 4/19/2011)** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 16, filed 5/10/2011)** is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the 42 U.S.C. § 1983 claim based on the Fourth Amendment wrongful arrest and/or detention against Defendants Williams and Ewing remain.  All other claims against Defendants Williams and Ewing are DISMISSED.

IT IS FURTHER ORDERED that Defendant City of Highland Park is DISMISSED.

IT IS FURTHER ORDERED that Plaintiff may depose Defendants Williams and Ewing and discovery for this purpose only is extended and must be completed within 45 days from the entry of this Order.

IT IS FURTHER ORDERED that the Final Pretrial Conference is scheduled for **Tuesday, November 15, 2011, 2:15 p.m.**  The proposed **Joint** Final Pretrial Order required under E.D. Mich. LR 16.2 must be submitted by November 8, 2011.  All parties with authority to settle must attend. A trial date will be set at the Final Pretrial Conference.

s/Denise Page Hood_____
United States District Judge

Dated:  September 20, 2011

18

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 20, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager